[May v. Ritchie.]

# May v. Ritchie.

*Statutory Real Action in nature of Ejectment.*

1. *Construction of deed unskillfully drawn.*—In the construction of a deed which shows on its face that it was drawn by an ignorant person, or one who was not acquainted with the force and meaning of the technical words used, a greater latitude of construction is indulged, than when it is skillfully drawn, and appears to have been written by a person who was familiar with the use of technical terms ; and the indiscriminate use of the words *children* and *heirs of the body,* to designate the same class of persons, is a marked manifestation of unskillfulness on the part of the draughtsman.

2. *"Heirs of the body"; when construed as words of purchase.*—A deed of gift executed in 1848, by which property was conveyed in trust for the grantor's married daughter "and the *heirs of her body,* for their support and the support of her *children*; and at the lawful age of her youngest *child,* after her death, then the property to be equally divided among her *children,"*—creates an estate for life in the daughter, with remainder to her children as purchasers.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN MOORE.

This action was brought by Mrs. Flora J. Richie and others, against Frank E. May and H. G. Parmer, to recover the possession of a tract of land particularly described in the complaint ; and was commenced on the 22d September, 1880. Two of the plaintiffs were the daughters of Mrs. Christiana Pugh, deceased, " who died about nine years before the commencement of this suit," and the others were her grandchildren by a deceased daughter. They claimed the land under a deed of gift from James McFarland, the father of Mrs. Pugh, which was dated and executed on the 15th April, 1848, and the material portions of which are copied in the opinion of the court. The defendants asserted title to the portions of the land of which they were respectively in possession, under deeds of conveyance from Mrs. Pugh and her husband ; and they had been in possession, claiming title, since January, 1867. The court charged the jury, that Mrs. Pugh took only an estate for life under the deed from McFarland, and the plaintiffs took in remainder as purchasers ; and that they must find for the plaintiffs, if they believed the evidence. The defendants excepted to this charge, and they now assign it as error.

COOK & ENOCHS, for the appellants, cited *McGraw v. Davenport,* 6 Porter, 319 ; *Darden v. Burns,* 6 Ala. 362; *Powell v.*

[May v. Ritchie.]

*Glenn*, 21 Ala. 458; *Isbell v. Maclin*, 24 Ala. 315; *Echols v. Jordan*, 39 Ala. 24; *Young v. Kinnebrew*, 36 Ala. 97; *McCullough v. Gliddon*, 33 Ala. 208; *Harkins v. Coalter*, 2 Porter, 463; *Price v. Price*, 5 Ala. 578; *Ewing v. Slandeier*, 18 Ala. 400; *Parish v. Parish*, 37 Ala. 591; *Mason v. Pate*, 34 Ala. 379; *Scott v. Abercrombie*, 14 Ala. 270; *Machen v. Machen*, 15 Ala. 373.

CLEMENTS & TYSON, and R. M. WILLIAMSON, *contra*, cited *Roberts v. Ogbourne*, 37 Ala. 174; *Dunn v. Davis*, 12 Ala. 135; *Mason v. Pate*, 34 Ala. 379; *Woodley v. Findlay*, 9 Ala. 716; *Twelves v. Nevill*, 39 Ala. 175; *Prescott v. Presscott*, 10 B. Monroe, 56.

BRICKELL, C. J.—The deed executed on the 15th April, 1848, by James McFarland, conveys real and personal estate to Samuel Jordan, in trust, for the use of the daughter of the grantor, Christiana Pugh, in words as follows: "I give unto Samuel Jordan, in trust for my said daughter Christiana, and the heirs of her body," followed by a description of the property; and following the description of the property, are these words: "Which said property I give in trust to Samuel Jordan, for the use of my said daughter Christiana, and the heirs of her body, for their support, and the support of her children; and at the lawful age of her youngest child, after her death, then the above property to be equally divided among her children." The only question now presented is, whether Mrs. Pugh took a life-estate, with remainder to her children, or an estate-tail, converted by the statute into a fee simple. The deed having been executed before the enactment of the present statutes, they can exert no influence upon its construction.

The real inquiry is as to the intention of the grantor. What estate and interest did he intend to create? In arriving at his intention, the character of the deed is a material consideration—whether it carries upon its face the evidence that it was skillfully drawn, by one acquainted with the use of technical words, or drawn by one unacquainted with them and their force and meaning. In the latter case, greater latitude of construction must be indulged, than in the former.—*Saunders v. Saunders*, 20 Ala. 710; *Hamner v. Mason*, 22 Ala. 433. The whole structure of the deed clearly indicates that it was drawn by one not skilled in drawing such instruments, unacquainted with their forms, and unacquainted with the meaning—the technical meaning and force—of the expressions employed. The indiscriminate use of the words *heirs of the body*, and of the word *children*, to designate the

same class of persons, is a marked manifestation of unskillfulness, and the want of knowledge of the difference in the legal meaning of the terms.

The words *heirs of the body*, unexplained, unrestricted, certainly created an estate-tail at common law. They were the appropriate words for the creation of that estate, limited to lineal descendants generally ; as was the general term *heirs*, to the creation of a fee simple, a pure inheritance, clear of qualification or condition, to which whoever was the heir of the first taker at the time of his death, whether lineal or collateral, would succeed. But, whenever it was apparent, on the face of the instrument creating an estate, that either of these terms, *heirs*, or *heirs of the body*, was employed, not as words of limitation, but as words of purchase,—as words designating a particular class, who were to take, not from or through an ancestor, but from the grantor or devisor,—they did not create either a fee simple, or a fee tail. The grantor gives the daughter an estate for life only, in express terms. It was not intended that she should have or take any greater estate or interest. But, under the operation of the rule in *Shelley's* case, of force when the deed was executed, a gift to one for life, and then to the *heirs of his body*, would create an estate-tail ; the words *heirs of the body* being, in their natural and ordinary signification, words of limitation, and not of purchase. The word *children*, however, is as essentially a word of purchase, and never construed as a word of limitation, unless absolutely necessary to give effect to the clear intention of the grantor or devisor.—*Dunn v. Davis*, 12 Ala. 135 ; *Scott v. Nelson*, 3 Port. 452. And whenever the word *children*, and *heirs of the body*, are indiscriminately used to designate remainder-men, they have been regarded as words of purchase, designating a class of persons who were to take on the expiration of the particular estate,—not from the tenant of that estate, but from the donor ; a different intention not being clearly indicated. *Dunn v. Davis*, 12 Ala. 135 ; *Shepherd v. Nabors*, 6 Ala. 631 ; *Twelves v. Nevill*, 39 Ala. 175 ; *Robertson v. Johnson*, 30 Ala. 197 ; *Williamson v. McConico*, 36 Ala. 22.

If the estate for life, expressly given to the daughter, were enlarged into an estate-tail, converted by the statute into a fee simple, it is apparent the intention of the donor, which ought to prevail, so far as it is not offensive to law, would be disappointed and defeated. The gift over to the children—the division of the property among them, after the death of the mother, when the youngest became of age— would fail. We can not doubt that the words *heirs of the body* were used as the synonym of *children* ; and being so

[Hinson v. Gamble & Bolling.]

used, the first taker had but a life-estate, with remainder to her children.

Such was the construction given the deed by the Circuit Court, and its judgment is affirmed.